UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

RUTHIE BROOKER,               )
    Plaintiff,              )
                           )
v.                            )    Case No. CIV-20-398-P
                           )
ANDREW M. SAUL,               )
Commissioner of the           )
Social Security Administration, )
    Defendant.              )

## ORDER

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 423, 1382. Defendant answered the Complaint and filed the administrative record (hereinafter AR___), and the parties briefed the issues. For the following reasons, Defendant's decision is reversed and remanded for further administrative proceedings.

I.    Administrative History and Agency Decision

Plaintiff filed an application for DIB and an application for SSI alleging a disability onset date of August 31, 2016. AR 253-54, 255-60. The Social Security Administration ("SSA") denied both applications initially and on reconsideration. AR 90, 91, 92-104, 105-17, 118, 119, 120-34, 135-49. An Administrative Law Judge

("ALJ") then held a hearing at which Plaintiff and a vocational expert ("VE") testified. AR 42-54.[1] The ALJ issued a decision denying benefits on June 3, 2019. AR 13-35.

Following the agency's well-established sequential evaluation procedure, the ALJ found Plaintiff had not engaged in substantial gainful activity since August 31, 2016, the alleged onset date. AR 19. At the second step, the ALJ found Plaintiff had severe impairments of obesity, essential hypertension, depression, and anxiety, *i.e.*, social anxiety disorder. AR 20. At the third step, the ALJ found these impairments were not *per se* disabling as Plaintiff did not have an impairment or combination of impairments meeting or medically equaling the requirements of a listed impairment. AR 21.

At step four, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform less than a full range of sedentary work. AR 23. The ALJ indicated Plaintiff can lift and/or carry ten pounds occasionally and nine pounds frequently, stand and/or walk for two hours and sit for six hours in an eight hour workday, can never climb a ladder, rope, or scaffold, and occasionally kneel, crouch, crawl, and climb ramps/stairs. *Id.* The ALJ further explained that Plaintiff can perform simple and some complex tasks, can relate to others, including supervisors,

---

[1] An initial hearing was held on May 4, 2018, at which Plaintiff did not appear. AR 56-89.

co-workers, and the general public on a superficial basis, and can adapt to a work situation. *Id.* at 23-24.

At step five, relying on the VE's testimony, the ALJ determined Plaintiff's RFC allowed her to perform jobs existing in significant numbers in the national economy, including document specialist, electronics worker, and charge account clerk. AR 34. As a result, the ALJ concluded Plaintiff had not been under a disability, as defined by the Social Security Act, from August 31, 2016 through the date of the decision. AR 34-35.

The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. *Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

II.     Issue Raised

On appeal, Plaintiff contends the ALJ erred in his evaluation of the opinion of the consultative examiner, Dr. Mark Englander. Doc. No. 18 ("Pl's Br.") at 4-10.

III.    General Legal Standards Guiding Judicial Review

The Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether the correct legal standards were applied. *Biestek v. Berryhill*, __ U.S. __, 139 S.Ct. 1148, 1153 (2019); *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion." *Biestek*, 139 S.Ct. at 1154 (quotations omitted). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (citations, quotations, and brackets omitted).

The Social Security Act authorizes payment of benefits to an individual with disabilities. 42 U.S.C. § 401, *et seq*. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1509, 416.909 (duration requirement). Both the "impairment" and the "inability" must be expected to last not less than twelve months. *Barnhart v. Walton*, 535 U.S. 212 (2002).

The agency follows a five-step sequential evaluation procedure in resolving the claims of disability applicants. *See* 20 C.F.R. §§ 404.1520(a)(4), (b)-(g), 416.920(a)(4), (b)-(g). "If the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of her age,

education, and work experience." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). "The claimant is entitled to disability benefits only if he [or she] is not able to perform other work." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

IV.   <u>Analysis</u>

Plaintiff contends the ALJ erred by failing to properly consider Dr. Englander's consultative medical opinion. Dr. Englander conducted a consultative psychological examination of Plaintiff on August 5, 2017. AR 467-72. Relevant to the issues raised herein, Dr. Englander noted that toward the end of the examination, Plaintiff began to fall asleep on three to four occasions. *Id.* at 467.  Based on this as well as additional observations during the examination, Dr. Englander noted that Plaintiff's ability to sustain attention "appeared to be a problem." *Id.* at 467-69.

During her examination, Plaintiff reported several occasions when she fell asleep unexpectedly, including when she was driving her automobile and when she was at work. *Id.* at 467. In August 2016, she was terminated from her job because she kept falling asleep. *Id.* at 468. Additionally, she only drives short distances due to her problem of falling asleep. *Id.* She described multiple car accidents occurring within a few months of each other resulting from the same. *Id.* She reported she cannot watch television or a movie without falling asleep. *Id.* She also described situations in which she became repeatedly distracted and Dr. Englander observed the same occurring during the examination. *Id.* at 467-69. Dr. Englander concluded,

*inter alia*, "Sustaining attention, as described by [Plaintiff] and indicated in the interview, may limit or impair persevering and staying on task for productivity as expected in a work setting." *Id.* at 469.

The ALJ determined Dr. Englander's opinion was not persuasive. *Id.* at 29. He based this conclusion on the fact that Dr. Englander failed to "specify [Plaintiff's] mental abilities and limitations on a function-by-function basis," failed to "specify whether [Plaintiff] must take breaks in addition to the standard work beaks [] that occur about every two hours throughout the workday," and "Dr. Englander's opinion is inconsistent with the medical opinions by Dr. Laura Lochner, Ph.D., and Dr. William Farrell, Ph.D." *Id.* at 29-30.

Dr. Lochner, who did not examine Plaintiff but reviewed her medical records, concluded, *inter alia*, Plaintiff was not significantly limited in her ability to maintain attention and concentration, work in coordination with or in proximity to others without being distracted by them, sustain an ordinary routine without specialized supervision, and complete a normal workday and workweek without interruptions from psychologically based symptoms. AR 101-02. By contrast, Dr. Farrell, who was also limited to reviewing Plaintiff's medical records, concluded Plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods and complete a normal workday and workweek without interruptions from psychologically based symptoms. *Id.* at 131. Similar to Dr.

Lochner though, he also concluded Plaintiff was not significantly limited in her ability to work in coordination with or in proximity to others without being distracted by them and sustain an ordinary routine without specialized supervision. *Id.*

The parties acknowledge that effective March 27, 2017, new regulations regarding evaluation of medical opinions and prior administrative medical findings became effective. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (codified at 20 C.F.R. pt. 404 & 416). Because Plaintiff's applications were filed after the effective date, the parties agree the new regulations apply to her claims.

In the new regulations, the SSA explicitly delineated five categories of evidence including objective medical evidence, medical opinion, other medical evidence, evidence from nonmedical sources, and prior administrative medical findings. 20 C.F.R. §§ 404.1513, 416.913. "Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim." 20 C.F.R. §§ 404.1513(a)(4), 416.913(a)(4).

The regulations define "medical opinion" and "prior administrative medical finding" as follows:

> (2) Medical opinion. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: . . .

(i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

(ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

(iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

(iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

***

(5) Prior administrative medical finding. A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 404.900) in your current claim based on their review of the evidence in your case record, such as:

(i) The existence and severity of your impairment(s);

(ii) The existence and severity of your symptoms;

(iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1;

(iv) Your residual functional capacity;

(v) Whether your impairment(s) meets the duration requirement; and

(vi) How failure to follow prescribed treatment (see § 404.1530) and drug addiction and alcoholism (see § 404.1535) relate to your claim.

20 C.F.R. §§ 404.1513(a), 416.913(a).

The regulations also include a new section entitled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. §§ 404.1520c, 416.920c. The SSA has explained:

> To account for the changes in the way healthcare is currently delivered, we are adopting rules that focus more on the content of medical opinions and less on weighing treating relationships against each other. This approach is more consistent with current healthcare practice.

Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819 at 5854. In this regard, the regulations provide that the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Additionally, the SSA will consider a medical source's opinion using five factors -- supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(a), (c)(1-5), 416.920c(a), (c)(1-5).

The regulations also explain that a decision will articulate how persuasive the SSA finds all medical opinions and prior administrative medical findings. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). It provides that the most important factors in

evaluating persuasiveness are supportability and consistency. 20 C.F.R. Sections 404.1520c(b)(2), 416.920c(b)(2). The regulations dictate that the SSA

> will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

*Id.* The regulations mandate that when the decision-maker finds that two or more medical opinions or prior administrative medical findings are equal in supportability and consistency "but are not exactly the same," the decision will articulate the other most persuasive factors from paragraphs (c)(3) through (c)(5). 20 C.F.R. Sections 404.1520c(b)(3), 416.920c(b)(3).

Finally, an ALJ is required to explain ambiguities and material inconsistencies in the evidence and to explain why he did not adopt a medical opinion which conflicts with the RFC assessed. Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7. Thus, the Tenth Circuit's previous holdings that an ALJ may not pick and choose among or within the medical opinions in a case record, using the portions favorable to his decision while ignoring other unfavorable portions, remains. *Monique M. v. Saul*, No. 19-1345-JWL, 2020 WL 5819659, at *5 (D. Kan. Sept. 30, 2020); *see, cf., Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The

ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability.").

In reviewing the new regulations as a whole, they indicate the ALJ must take a holistic approach to the evaluation of medical opinions. For example, no particular medical opinion is entitled to controlling weight and the ALJ is instead expected to review the opinions in their entirety, determining primarily supportability and consistency, but also considering relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c, 416.920c.

In applying these new regulations to the case at hand, the Court notes the regulation defining a medical opinion as a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions with regard to various abilities, including but not limited to an "ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting . . . ." 20 C.F.R. §§ 404.1513(a)(4), 416.913(a)(4). Contrary to the ALJ's criticism of Dr. Englander's opinion, there is no requirement a medical opinion set out a function-by-function analysis of a plaintiff's abilities or limitations. In accordance with § 404.1513, Dr. Englander's

opinion specifically stated that Plaintiff's ability to sustain attention may limit her ability to stay on task and be productive in a work setting. AR 469. Moreover, Dr. Englander's recorded observations of Plaintiff during his examination supported this finding. *Id.* at 467-68.

The ALJ also stated that Dr. Englander's opinion in this regard was not persuasive because he failed to specify how many breaks she would require and the length of the same. AR 30. A plaintiff's ability to stay on task is not necessarily related to whether she requires additional breaks during a workday. As Plaintiff notes, and as reflected in the opinions of Drs. Lochner and Fuller, these are two separate limitations. Pl's Br. at 8; AR 101-02, 131. Thus, this reasoning does not provide substantial support for the ALJ's conclusion. Indeed, as Plaintiff notes, when the hypothetical proposed to the VE during the administrative hearing did not indicate a necessity for extra breaks but included narcoleptic events that occurred daily, lasting anywhere from five to thirty minutes, the VE stated that there would not be any available jobs in the national economy Plaintiff could perform. AR 49-51.

Finally, the ALJ stated that Dr. Englander's conclusion was not consistent with the opinions of Drs. Lochner and Fuller. AR 30. However, this statement is inaccurate. While Dr. Lochner stated that Plaintiff's ability to sustain concentration

and stay on task was not significantly limited, Dr. Fuller concluded that Plaintiff experienced moderate limitations in these areas. AR 101-02, 131.

Additionally, Plaintiff notes that in evaluating a medical opinion, an ALJ is supposed to consider whether it is derived from examining a patient, as Dr. Englander did, rather than merely reviewing that patient's records, as Drs. Lochner and Fuller did. Pl's Br. at 10. Defendant responds that this is no longer a valid consideration under the new regulations because an ALJ no longer weighs opinions and there is no inherent persuasiveness between agency consultants or an individual's own medical source. Doc. No. 22 at 6. However, this assertion misses the point and is also simply incorrect.

First, though not determinative to this issue, under the new regulations, because Dr. Englander examined Plaintiff rather than merely reviewing her records, his consultative assessment is considered a medical opinion rather than a previous administrative medical finding. Compare 20 C.F.R. §§ 404.1513(a)(2) and (a)(5). Second, contrary to Defendant's assertions, the new regulations specifically provide that among the factors an ALJ should consider in evaluating a medical opinion is whether the physician examined the plaintiff rather than only reviewing the plaintiff's medical records. *See* 20 C.F.R. § 404.1520c(3)(v) ("We will consider the following factors when we consider the medical opinion(s) and prior administrative medical finding(s) in your case: . . . Examining relationship. A medical source may

have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.").

The Court notes the regulations provide that an ALJ is not required to articulate how he evaluates evidence from nonmedical sources at least with regard to the factors applicable to medical opinions. *See* 20 C.F.R. § 404.1520c(d) ("We are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c) in this section.").[2] Nevertheless, the regulations explicitly contemplate some consideration of evidence from nonmedical sources as they define the same in 20 C.F.R. § 404.1513(a)(4), including nonmedical sources within the five categories of evidence considered in assessing these claims. Moreover, 20 C.F.R. § 404.1520(a)(3) provides that the SSA will consider *all* evidence in the record in evaluating a claim for disability.

In this vein, the Court notes that the record contained not only Plaintiff's own subjective descriptions, but also reports from multiple family members regarding Plaintiff's inability to sustain attention due to frequently falling asleep unexpectedly, resulting in difficulties completing the paperwork for the claims at issue herein, multiple vehicular accidents, and being terminated from her previous employment.

---

[2] It is unclear to the Court how factors applicable to medical opinions and/or prior administrative medical findings might ever be relevant in evaluating evidence from nonmedical sources.

AR 311-12, 315-18, 336, 338, 342, 348, 356-57, 359, 363, 364. The ALJ acknowledges this evidence within his decision but does not indicate the extent to which he considered it, if at all. AR 25-28. While the ALJ is not required to apply medical opinion factors to nonmedical source evidence, the regulations clearly do not contemplate or authorize simply ignoring such evidence that may otherwise be relevant to an ALJ's conclusions and/or findings.

Additionally, while these issues are not determinative of the ruling herein, on remand the ALJ may consider the following. First, the ALJ makes repeated reference to Plaintiff's lack of medical care, noting that she does not take medication, has not had a sleep study, has not required crisis intervention, and has not sought mental health counseling. AR 31, 32. The ALJ fails to address that Plaintiff and multiple relatives have consistently noted she cannot get necessary medical treatment because she does not have medical insurance and cannot afford any treatment or medication. AR 313, 318, 321, 326, 331, 336, 346, 351, 356, 357, 362, 385.[3] The Tenth Circuit has consistently held that an inability to afford treatment may be a legitimate reason for failure to seek the same. *Miranda v. Barnhar*t, 205 F. App'x 638, 642 (10th Cir

---

[3] For example, Plaintiff has an ovarian cyst on or near her left ovary measuring 12.7 x 6.7 x 9.1 cm. AR 432-33. Physicians have recommended surgery to remove the same. There is conflicting evidence regarding whether this has not been performed due to lack of insurance or hesitance on the part of Plaintiff. AR 313, 336, 357, 362, 431. The ALJ did not discuss these issues. Additionally, the ALJ's statement that Plaintiff has not sought mental health treatment is inaccurate. AR 473-80, 481-99, 521-52.

2005) (citing *Threet v. Barnhart*, 353 F.3d 1185, 1190–91 n.7 (10th Cir. 2003); *Thompson v. Sullivan*, 987 F.2d 1482, 1489–90 (10th Cir. 1993)). "[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide." *Miranda*, 205 F. App'x at 642 (quoting SSR 96–7p, 1996 WL 374186, at *7). There is no indication the ALJ performed the required analysis in this case.

Second, the ALJ finds that Plaintiff's living arrangements and/or daily activities diminish the severity of her subjective complaints because, *inter alia*, she "lives with a friend" and "talks on the telephone to her sister four times a week" and "spends time reading and watching television." AR 22, 32. The ALJ does not address, however, that Plaintiff lives in a horse barn with an alcoholic ex-boyfriend who is permitted to live there as part of his job. AR 311, 319, 348, 351, 354, 356-57, 385. She chooses to live there because of her inability to afford living on her own. *Id.* Additionally, Plaintiff and her family members consistently stated that she falls asleep when she tries to read or watch television and her sister specifically stated that Plaintiff constantly falls asleep while she tries to speak with her on the telephone. AR 315, 316, 317, 320, 323, 342, 348, 349, 353, 354, 357. On remand, the ALJ may more clearly consider these issues.

V.      Conclusion

Based on the foregoing analysis, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings. Judgment will issue accordingly.

ENTERED this  13th  day of  April , 2021.



GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE